1  BARRY J. PORTMAN
   Federal Public Defender
2  JOYCE LEAVITT
   Assistant Federal Public Defender
3  555 - 12th Street, Suite 650
   Oakland, CA  94607
4  Telephone:  (510) 637-3500

5  Counsel for Respondent HELENA LAU

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  **In The Matter Of The Requested**          ) No. CR 08-90359 MISC (CW)
    **Extradition Of**                          )
12                                              ) **MOTION FOR RELEASE ON BOND**
    **HELENA YUEN-LAN LAU**                     )
13                                              ) Hearing:      September 9, 2008
                                                ) Time:         10:00 a.m.
14                                              )
                                                ) Magistrate Judge Wayne D. Brazil
15                                              )

16

17

18

19

20

21

22

23

24

25

26

**INTRODUCTION**

Helena Lau, a dual citizen of the United States and Hong Kong, has been arrested and detained in the Northern District of California at the request of the Government of the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong"). Hong Kong seeks the extradition of Ms. Lau in connection with the charge of theft and an alternative charge of fraud filed against Ms. Lau in that country.

Ms. Lau requests that she be released on bond pending her extradition hearing in this Court for a number of reasons. First, she is not a flight risk. Second, Ms. Lau would be permitted to request bail if she is returned to Hong Kong, and she would be eligible for bail in this Court were she charged in a similar offense under the United States Code. Third, Ms. Lau has lived openly in the United States since 2003, with no attempt to disguise her whereabouts. She has lived at the same residence for the past three years and until her arrest, was working for the Department of Motor Vehicles. Despite the fact that she has lived openly, Hong Kong waited five years before starting extradition proceedings with no apparent explanation for the delay. Finally, Ms. Lau's mother and brother, both United States citizens, are willing to sign a bond and post property. The combined equity of the two properties are believed to be approximately $600,000- $800,000. These special circumstances support release.

**FACTUAL BACKGROUND**

As set forth in Hong Kong's formal request for her extradition, Ms. Lau is charged with taking money from her former employer, Christopher Mark Quinton Rampton, without authorization, during the period from December 1998 to March 2003, in violation of Section 9 and Section 16A of the Theft Ordinance, Chapter 210, Laws of Hong Kong.

Helena Lau was born in Hong Kong on September 24, 1960, and lived there with her family until 1975. In 1975, at the age of 14, she moved to the United States with her parents. She graduated from high school in the United States. In 1981 at the age of 21, Ms. Lau became a naturalized United States citizen. That same year, she moved back to Hong Kong where she lived

1  for the next 22 years.

2      Ms. Lau has family both in the United States and in Hong Kong. Helena Lau's parents

3  remained in the United States after she moved to Hong Kong and her 74 year old mother still lives in

4  the area. Ms. Lau's father died of cancer in 2005 and Ms. Lau was able to help care for her father

5  until his death. In addition, Ms. Lau's brother, Alfred, lives in the area as well and runs his own

6  pharmacy. Helena's 23 year old son, Jonathan also lives in the United States. He also is a

7  naturalized United States citizen. He is a college student. Meanwhile, Ms. Lau also has two brothers

8  who live in Hong Kong.

9      Ms. Lau returned to the United States in 2003 and has remained here ever since. Ms. Lau has

10  had steady employment and has lived at the same address for the past three years. Before that, she

11  lived with her parents at their address for two years and assisted in caring for her father. At the time

12  that Ms. Lau left Hong Kong, there were no criminal charges pending. In the time since she returned

13  to the United States, Ms. Lau has lived and worked under her real name. She has made no attempt to

14  conceal her identity or whereabouts.

15                          **ARGUMENT**

16  **I.    THE STANDARD FOR BAIL IN EXTRADITION CASES**

17      The Bail Reform Act, 18 U.S.C. § 3141 et seq., applies only to persons accused of committing

18  crimes against the United States, and the statute that governs international extradition proceedings,

19  Title 18 U.S.C. § 3184, is silent regarding conditions for granting bail. Rather, "the district court's

20  authority to grant bail in extradition cases is rooted in the Supreme Court's decision in *Wright v.*

21  *Henkel*, 190 U.S. 40 (1903)." *Matter of Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1997).

22      **A.    *Wright v. Henkel* and "Special Circumstances"**

23       In *Wright v. Henkel*, the United States Supreme Court recognized a presumption against bail in

24  extradition cases, due to the foreign relations interest of the United States in successfully returning

25  persons subject to criminal prosecution in the requesting country. *Wright,* 190 U.S. at 63. The

26  United States has an obligation to surrender any person who has been ordered extradited, and an

1  inability to do so would result in "serious embarrassment" for the United States.  *Wright,* 190 U.S. at

2  62.  Despite this presumption, however, the Supreme Court was "unwilling to hold that. . . . while

3  bail should not ordinarily be granted in cases of foreign extradition, [ ] courts may not in any case,

4  and whatever the special circumstances, extend that relief."  *Wright,* 190 U.S. at 63.  That single

5  phrase is the sole guidance offered by the Court on the propriety of bail in extradition cases.

6       In the first reported opinion addressing bail after *Wright v. Henkel*, Judge Learned Hand, then a

7  district court judge, granted bail to the petitioner, who was arrested on a warrant from Canada for

8  larceny the day before a civil trial was to commence in which he was a plaintiff.  *In re Mitchell,* 171

9  F. 289, 290 (S.D.N.Y. 1909).  Judge Hand affirmed that petitioner had a right to bail, and that the

10 right "must depend entirely upon *Wright v. Henkel*[.]"  *Id.*  He then found that denying bail would

11 prejudice the petitioner's ability to consult with counsel in the civil suit.  *In re Mitchell*, 171 F. at

12 290.  These "special circumstances," along with the fact that petitioner had known of the

13 proceedings for some time but made no effort to avoid them or escape, justified bail.  *Id.*

14      In the nearly 100 years since *In re Mitchell*, the lower courts have grappled with the meaning of

15 the Supreme Court's reference to "special circumstance" in *Wright v. Henkel*.  A wide variety of

16 circumstances have been deemed sufficiently "special" to justify bail in the extradition context.  *See*

17 *Kirby*, 106 F.3d at 863-65[1] (special circumstances shown by combination of factors, including long

18 delays during extradition proceedings); *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996)

19 (special circumstances may include a delayed extradition hearing); *In re Salerno*, 878 F.2d 317, 317

20 (9th Cir. 1989) (deteriorating health, unusual delay in the appeal process, and substantial likelihood

21 of success on the merits may be special circumstances); *In re Morales,* 906 F. Supp. 1368, 1376

22 (S.D. Cal. 1995) (extradition complaint was defective, causing delay in proceeding); and *United*

23 *States v. Taitz,* 130 F.R.D. at 445-47 (combination of unusual factors amounted to special

24

25      [1] In *Kirby*, the Ninth Circuit upheld the Hon. Charles A. Legge's decision releasing three Irish
   fugitives who had escaped from prison in Northern Ireland, pending a hearing under 18 U.S.C. §
26 3184 to determine whether they were extraditable to the United Kingdom.

circumstances, including health problems experienced by fugitive during incarceration).

Other courts have granted bail in extradition cases with no discussion of whether special circumstances were found. *See, e.g., Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976); *Vardy v. United States,* 529 F.2d 404, 405 (5th Cir. 1976); *Shapiro v. Ferradina*, 478 F.2d 894, 898 (2d Cir. 1973); *United States v. Clark*, 470 F. Supp. 976, 977 (D. Vt. 1979); *In re Sindona*, 450 F. Supp. 672, 675 (S.D.N.Y. 1978); *Wacker v. Bisson*, 370 F.2d 552 (5th Cir. 1967); *In re Extradition of D'Amico*, 177 F. Supp. 648, 650 (S.D.N.Y. 1959).

The source of the confusion is straightforward:   There is a presumption against bail in extradition cases because of the importance of the relationship between the United States and other countries.  The United States would be internationally embarrassed if it was unable to extradite a person who had been ordered extradited.  This rationale, however, goes solely to risk of flight.  In other words, if there is no risk of flight, bail should logically be granted regardless of special circumstances.  Likewise, if there is a risk of flight, bail should not be granted regardless of special circumstances.

**B.    Courts And Commentators Have Expressed Doubts About the Constitutionality of the "Special Circumstances" Doctrine**

Most recently, courts and commentators have raised constitutional questions about the limitations imposed on bail in the extradition context. *See* Persily, *International Extradition and the Right to Bail*, 34 Stan. J. Int'l L. 407 (Summer, 1998), *citing Parretti v. United States*, 122 F.3d 758 (9th Cir. 1997) (concluding that the special circumstances standard violates the Due Process Clause of the Fifth Amendment), decision withdrawn and appeal dismissed on other grounds, 143 F.3d 508 (9th Cir. 1998) (en banc); *In re Kirby*, 106 F.3d 855, 859 (9th Cir. 1996) (determining that  appellate courts have jurisdiction for direct appeals from bail determinations in extradition proceedings).

The Ninth Circuit discussed the issue extensively in *Parretti v. United States.*  In *Parretti* the district court denied bail even though the court declined to find that Parretti posed a flight risk.  The district court found, instead, that Parretti had failed to demonstrate "special circumstances." *Parretti,*

122 F.3d at 776-77.  On appeal, the Ninth Circuit held that the district court had not abused its discretion in determining that Parretti had not established special circumstances, but concluded that his detention without bail violated the Fifth Amendment because he posed no risk of flight or danger to the community.  *Id.* at 777.  The Ninth Circuit subsequently withdrew the opinion on different grounds, without discussing the substance of the earlier opinion.  Despite the withdrawal, however, the Circuit Court's original reasoning is sound.  Moreover, it serves as an indication of how the Ninth Circuit is likely to hold when the issue is eventually presented to it for decision.[2]

The *Parretti* court began its analysis of the merits of Parretti's claim by reviewing *United States v. Salerno*, 481 U.S. 739 (1987), in which the Supreme Court held that the Bail Reform Act does not violate constitutional principles in authorizing pre-trial detention where there is a showing that no release condition would reasonably assure the safety of the community.  *Salerno,* 481 U.S. at 778.  The *Parretti* court noted that, in *Salerno*:

> After declaring that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the Court held that the safety of the community was a sufficiently "legitimate and compelling" government interest to justify the "carefully limited exception" carved out by Congress in the Bail Reform Act of 1984.  Such carefully limited exceptions are permitted only when the government's interest is "sufficiently weighty" to subordinate "the individual's strong interest in liberty" to "the greater needs of society."

*Id.*  The *Parretti* court then proceeded to reject the government's argument that its interest in fulfilling its treaty obligations is so compelling that it justifies detention pending every extradition hearing regardless of how negligible the risk of flight.  *Id.* at 778-79.  The court explained that:

> [T]he purpose of extradition treaties is to strengthen our hand in enforcing our own laws through the cooperation of other countries in apprehending fugitives.  Yet the government implicitly argues that the law enforcement interest served by extradition treaties is somehow different from and

---

[2] As the circuit court noted, no other court has addressed, let alone decided, this constitutional question.  *Parretti*, 122 F.3d at 777.  Furthermore, in the 11 years since the *Parretti* panel opinion was published (though later withdrawn on other grounds) neither the Ninth Circuit nor any other circuit has discussed or – most significantly – contradicted the constitutional issue as analyzed in *Parretti*.

greater than its interest in enforcing our domestic laws.  The government fails to suggest any difference, and we can fathom none.

If the government's interest in avoiding all risk of flight pending an extradition hearing justified detention without bail, then it stands to reason that the same interest would also justify pre-trial detention in domestic criminal cases.  Yet if Parretti had been arrested on charges of violating our own laws against business fraud, and was neither a flight risk nor a danger to the community, it would be unthinkable that he could be held without bail pending trial.  It should be equally unthinkable that he may be held without bail pending an extradition hearing.

The government cites no authority for the proposition that its interest in "avoiding any risk that the extraditee may flee" is sufficiently weighty to justify detention without bail pending an extradition hearing.  As far as we know, the only governmental interest that has ever been deemed sufficiently weighty to justify pre-trial or pre-hearing detention without bail absent a finding of flight risk is safety of the community.

*Id.* at 779 (internal citation omitted).  After clarifying that the district court was free to decide anew whether to grant or deny Parretti bail if it found him to be extraditable after his hearing, the court stated its holding: "until such time as an individual is found to be extraditable, *his or her Fifth Amendment liberty interest trumps the government's treaty interest unless the government proves to the satisfaction of the district court that he or she is a flight risk*."  *Id.* at 780 (emphasis added).

The Ninth Circuit's reasoning in *Parretti,* combined with the fact that the Supreme Court in *Wright* never defined "special circumstances," calls into question the various lower court opinions demanding that the respondent in an extradition case show compelling circumstances in addition to no risk of flight.

## II.    HELENA LAU IS NOT A FLIGHT RISK

Ms. Lau is not a flight risk.  Her Fifth Amendment liberty interest, therefore, mandates that she be granted bail.

The Court may evaluate whether Ms. Lau poses a risk of flight by analogy to the criteria set forth in the Bail Reform Act, 18 U.S.C. § 3142(b).  *See, e.g., In re Extradition of Campillo Valles*, 36 F.Supp.2d 1228, 1231 (S.D. Cal. 1998) (in extradition proceeding, applying "standards governing the release or detention of a defendant in the United States" to determine whether defendant presented

risk of flight or danger); *In re Extradition of Santos*, 47 F. Supp.2d 1030, 1041 (C.D. Cal. 2006) (same). In so doing, the Court may look to, *inter alia*, the nature and circumstances of the charged offense; the potential extraditee's past conduct, including history of drug or alcohol abuse; any prior convictions; the potential extraditee's family ties and ties to the community; and the possibility of posting security for an appropriate bond. *See Santos*, 47 F. Supp.2d at 1041 (citing 18 U.S.C. § 3142(g)(1)-(4).

First, the conduct at issue in this case involves financial transgressions. Ms. Lau is charged with taking money from an individual who previously employed her over a period of time. It is not a crime of violence or a drug trafficking crime. It is a financial crime and involves one victim. It is a crime of opportunity. There is no indication that Ms. Lau is a danger to the community at large.

In addition, Helena Lau has no criminal history either here or in Hong Kong. Furthermore, there is no indication that she ever abused drugs or alcohol and Ms. Lau will affirmatively state that she does not have a problem with drugs or alcohol.[3]

Ms. Lau has a history of steady employment and long term residential history. While in Hong Kong, Ms. Lau had been a long-term employee of the Securities Division of Jardine Fleming Holdings and was employed there from 1991 until 2002. After moving to the United States, she cared for her father and then also worked for the Department of Motor Vehicles from 2007 until she was arrested in the instant case.

Finally, as stated above, Ms. Lau has numerous close family ties in the Bay Area. Ms. Lau's mother, her brother, and adult son, all live in the area and remain in close touch with the petitioner. Ms. Lau's mother and brother remain supportive of Ms. Lau and are willing to post property with equity of approximately $600,000 or more.

---

[3]There was an assertion that Ms. Lau has or had a gambling problem in Hong Kong. Undersigned counsel notes that there is no evidence of any gambling since she returned to the United States five years ago in 2003, Ms. Lau denies gambling during this time which is consistent with our investigation and undersigned counsel does not believe it is an issue at this point.

III.    **ADDITIONAL "SPECIAL CIRCUMSTANCES" ARE ALSO PRESENT**

Even if this Court believes that it must find special circumstances in addition to no risk of flight, Ms. Lau can easily demonstrate those circumstances.

A.    **Ms. Lau Will Be Able To Request Bail In Hong Kong, and Would Be Likely to Be Released Pre-trial for the Same Offense Here**

In determining whether special circumstances exist, the Court must evaluate whether Ms. Lau would be entitled to bail on the substantive offenses in Hong Kong. *See In re Gannon*, 27 F.2d 362 (E.D. Pa. 1928); *Matter of Extradition of Nacif-Borge*, 829 F. Supp. 1210 (D. Nev. 1993). The availability of bail in the requesting country constitutes a "significant" factor that warrants release on bail in the United States. *See Nacif*, 829 F. Supp. at 1221 ("The availability of bail under the law of Mexico entitles Nacif to bail pending extradition if he is not a risk of flight or danger to others.").

Defense counsel consulted with an attorney in Hong Kong who specializes in extradition cases. The attorney confirmed that Ms. Lau's alternate offenses of theft or fraud are bailable offenses in Hong Kong which does not mean that a judge in Hong Kong would necessarily grant bail to Ms. Lau, but rather that the offenses alleged are ones for which bail is available.[4]

Additionally, one case from the Southern District of New York has found to be a special circumstance the fact that the potential extraditee would be eligible for bail had he been charged with the same offense in the United States. *See In re Sacirbegovic*, 2004 WL 1490219, *3 (unpub. dispo.) (S.D.N.Y. July 6, 2004) (granting release on bail, and finding as special circumstance that petitioner "would be eligible for bail had he been charged with embezzlement in the United States"). In the present case if Ms. Lau were charged in the United States with either theft or fraud, it seems highly likely that she would be released on bail by a federal magistrate judge.

In this case, as in *Nacif*, the availability of bail under the law of Hong Kong entitles Ms. Lau to

---

[4]The Hong Kong attorney suggested that the government in Hong Kong in similar cases may agree to a deal in which they will not object to bail in Hong Kong and will fix the terms in advance in exchange for an agreement not to challenge extradition. Undersigned counsel has spoken to the Assistant United States Attorney assigned to this case and requested that the prosecutor speak with the officials in Hong Kong about this possibility.

1  bail pending extradition because he is not a flight risk or a danger.  *See Nacif*, 829 F. Supp. at 1221.

2  **B.      Hong Kong's Delay in Seeking Extradition of Ms. Lau is a Special Circumstance**

3  In reviewing requests for bail in extradition cases, courts have considered as a special

4  circumstance any delay on the part of an extraditing country in filing charges and seeking extradition,

5  especially in a situation where the person sought was living openly in the United States.  *See, e.g.,*

6  *United States v. Wroclawski*, – F. Supp.2d –, 2008 WL 2351041, *5 (D. Ariz. June 5, 2008)

7  (granting release and finding as special circumstances the 11-year delay between the extradition

8  warrant and defendant's being charged in Poland, and the fact that defendant lived openly in the

9  United States during that time); *In re Extradition of Chapman*, 459 F. Supp.2d 1024 (D. Hawai'i

10  2006) (finding as special circumstance warranting release "the lack of any diplomatic necessity for

11  denying bail," on the basis that the extraditing country "has not made prosecution of this offense a

12  priority" because it waited three years before bringing extradition charges "during which [time]

13  Respondents were living openly and notoriously").

14  In the present case, Ms. Lau's alleged criminal conduct took place between December 1998 and

15  March 2003.  Ms. Lau left Hong Kong in 2003 and has been living openly in this country for five and

16  a half years since her alleged criminal conduct ended.  Only now, in 2008, has the government of

17  Hong Kong made any effort to extradite her.  *See* Request of Hong Kong to Consulate General of

18  United States, requesting extradition of Helena Lau, dated April 30, 2008 (attached as exhibit to

19  Diplomatic Request, which was filed with this Court on August 15, 2008) (CR 11).  Thus, as was the

20  case in *Wroclawski* and *Chapman*, *supra*, Hong Kong's delay in seeking extradition of Ms. Lau,

21  where she made no effort to conceal her whereabouts or her identity, is a special circumstance that

22  entitles her to bail in this case.

23  **IV.    REASONABLE CONDITIONS WILL ENSURE MS. LAU'S APPEARANCES AS REQUIRED BY THIS COURT**

24  As stated above, Helena Lau's mother and her brother are willing to post property with

25  substantial equity to insure her appearances before this Court.  Ms. Lau is further willing to submit to

26

1  whatever conditions of release which this Court deems appropriate, including electronic monitoring

2  and home detention.  For all of the reasons set out above, the Court should grant bail in this case.

3  **CONCLUSION**

4      Release on bond is warranted in this case.  Ms. Lau poses no risk of flight, and there are

5  numerous special circumstances which support release.  For the foregoing reasons, Ms. Lau

6  respectfully requests that the Court order her release on bond pending the extradition hearing in this

7  case.

8  Dated: September 3, 2008

9
10                              Respectfully submitted,

11                              BARRY J. PORTMAN
                                Federal Public Defender
12
                                /S/
13
                                JOYCE LEAVITT
14                              Assistant Federal Public Defender

15

16

17

18

19

20

21

22

23

24

25

26